IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSEPH HIPLER,

                               Petitioner,                         OPINION AND ORDER

    v.

RANDALL HEPP, Warden,                                      09-cv-371-slc
Jackson Correctional Institution,

                               Respondent.

---

      Joseph Hipler is serving a 20-year bifurcated sentence following his 2003 conviction in the Circuit Court for Pierce County of first-degree sexual assault with use of a dangerous weapon and false imprisonment. Having failed in two rounds of post-conviction review to convince the Wisconsin courts to overturn his conviction, Hipler now seeks federal habeas relief under 28 U.S.C. § 2254. Hipler contends that the lawyer who represented him during the initial post-conviction proceeding and on direct appeal was ineffective because he failed to raise a claim of ineffective assistance Hipler's trial attorney. Specifically, Hipler contends that during post-conviction proceedings, his lawyer should have raised a claim that trial counsel had been ineffective because he: 1) failed to preserve constitutional objections to the trial court's order excluding Hipler's expert witness, and 2) failed to seek a limiting instruction concerning the introduction of evidence that Hipler was distributing cocaine the day of the alleged sexual assault. Because Hipler has failed show that the state courts unreasonably applied clearly established federal law when they rejected his claims, I am denying the petition.

      The following facts are undisputed and are drawn largely from the court of appeals' unpublished opinions on Hipler's direct appeal of his conviction, *State v. Hipler*, 2006 WL

3025701 (Ct. App. 2006), attached to Response, dkt. 13, exh. B, and on his appeal of the denial of his post-conviction motion filed under Wis. Stat. § 974.06, *State v. Hipler*, 2008 WL 5146867 (Ct. App. 2008), dkt. 13, exh. G.

## FACTS

### I. Trial

The events underlying to Hipler's conviction occurred on March 29, 2003. That afternoon, K.N., a neighbor of Hipler's, came to his apartment to help clean up after socializing at the apartment the previous night. Hipler's friend Clinton Cowles also was visiting, and all three had some drinks and discussed going to a party that evening hosted by a friend of Cowles. What happened later was disputed at trial, with K.N. and Hipler providing diametrically opposed versions of events. Hipler was represented at trial by Aaron Nelson.

K.N. testified at trial that during the time she was at Hipler's apartment, other people she did not know began dropping in, going into Hipler's bedroom, and staying there for a few minutes before departing. K.N. saw Hipler, Cowles, and two other individuals in the bedroom with a "gallon size bag" of white powder that K.N. "assumed at the time to be cocaine." When Hipler saw K.N. in the bedroom doorway observing him and the others with the bag of white powder, he at first appeared surprised, then angry. When Hipler asked K.N. what she was doing, K.N. said she was leaving. Hipler demanded that K.N. stay, and he physically prevented her departure by grabbing her arm and forcibly escorting her to the living room.

K.N. testified that after that, over the course of the evening, Hipler forced K.N. to accompany him to Cowles's apartment, a bar and a party, keeping her close to him, holding her

purse and cell phone when she went to the restroom, and at times restraining her by force. K.N. saw a razor blade and white powder on a book at Cowles's apartment. K.N. testified that:

> at that point that he said to me, "you didn't see anything tonight." And I said to him, "I don't know what you are talking about." He said, "okay, well good, you didn't see anything tonight, if you make problems for me I will make problems for you, your friends and your family."

Trial Tr., dkt.14, exh. P, at 142.

K.N. testified that when they returned to the apartment building in which they both lived, K.N. tried to go to her apartment but Hipler stopped her, demanding, "What are you doing?" Hipler grabbed her by the hair and pulled her back. K.N.'s keys went flying, hitting Hipler in the face and angering him. Hipler pushed K.N. up against the wall, with his forearm against her chest, all the while swearing at her. Hipler grabbed K.N. by the arm and directed her to his apartment.

K.N. testified that the next thing she remembered was that she and Hipler were sitting on his couch, then suddenly they were in Hipler's bedroom on the bed, with Hipler holding a gun to her head. K.N. was fighting against Hipler and he could not control her, so he "put the gun down and then pinned my arms above my head, and then he was having sex with me." K.N. continued to fight Hipler and telling him "No." At one point K.N. brought her arm up and hit Hipler on the side of his face and he backed off, seemingly shocked. K.N. then grabbed his genitals and pulled as hard as she could. Hipler rolled off the bed and fell onto the ground; K.N. got up and returned to her apartment.

Nine days later, on April 7, 2003, K.N. visited her father, who testified at trial that K.N. was visibly upset and worried when she arrived. In response to her father's questions, K.N.

stated that she had been raped. K.N.'s father called the River Falls Police Department and reported the sexual assault. The next day, K.N. gave a statement to RFPD Officer Bruce Whitaker about the sexual assault. The same day, K.N.'s father took her to a clinic where she was examined by nurse Linda Friede. Friede's examination detected some bruising above K.N.'s pubic bone and light bruising on her labia.

When asked at trial why she did not call the police between March 29 and April 7, K.N. testified:

> I was scared to death. I took what he said to heart. I thought for sure if I did anything about it he would make problems for me and my family, friends.

Trial Tr., dkt. 14, exh. P., at 32.

Hipler's trial testimony contrasted starkly with H.N.'s testimony. Hipler denied that anyone who stopped by his apartment on March 29, 2003 ever went into his bedroom. He never forced K.N. to stay in his apartment or to accompany him when he left and that he never physically restrained her or told her she could not leave. Rather, K.N. had asked to come along to Cowles's party, where Hipler left K.N. alone on several occasions. K.N. took her purse and cell phone with her when she went to the bathroom, and he never did anything to prevent her from using her phone. When K.N. said she wanted to go home, Hipler gave her a ride. Once at their apartment building, they parted company and went to their respective apartments. Then, however, K.N. returned to his apartment, saying she was there to retrieve some beer she had left there earlier. K.N. got a "little flirty" with him and they exchanged a brief kiss, but after K.N. asked him about the girl he was seeing, he stopped any further physical contact. Hipler testified that he never prevented K.N. from returning to her apartment never falsely imprisoned

her, never pulled her hair or threw her against a wall and never sexually assaulted her. Hipler denied ever owning a handgun.

Before trial, the state moved in limine to allow expert testimony on rape trauma syndrome from Lesley Charlton, a psychotherapist who worked with victims of sexual assault. The state argued that Charlton's testimony would help the jury understand that it is not unusual for victims of sexual assault to delay reporting the assault to law enforcement. Hipler objected, arguing among other things that Charlton did not have experience counseling victims who had been raped at gunpoint. Over Hipler's objection, the trial court concluded that Charlton was qualified as an expert and that her testimony was relevant:

> It's obvious that this state is one where we allow expert testimony, almost wide open. I don't act as a gatekeeper. I think the argument that [defense counsel] makes is really an argument for the jury . . . As far as the sexual assault, I don't think it is so narrow as [defense counsel] was suggesting. You can only give an opinion to somebody with a gun who sexually assaults someone would result [*sic*] the victim in delaying those circumstances, I'm not aware of any subgroup like that. I don't know that any subgroup like that has a meaningful distinction in the area of whether or not someone reports or not.

Tr. of Mot. Hrg., June 13, 2003, dkt. 13, exh. N, at 23-23.

At trial, Charlton testified after K.N. Charlton testified generally about rape trauma syndrome and behaviors common among sexual assault victims. Charlton explained that it is not uncommon for victims of sexual assault to delay reporting assaults, because the anxiety, depression and shock that rape victims feel can affect their decision to report the crime. When cross-examined by Hipler's attorney, Charlton admitted that not all allegations of rape are substantiated; that as a therapist, her job was not to prove or disprove whether a victim's report

of sexual assault was true; that a delay in reporting neither proves nor disproves the allegations; and that she had never met K.N.

Later in the trial, Hipler moved to allow expert testimony from Holinda Wakefield, who would testify that it is not uncommon for individuals to make false claims of sexual assault; that at least one study had found that 41% of forcible rape accusations are false; and that there was no research comparing the behavior of actual rape victims to the behavior of people who falsely claimed to be rape victims.  The court denied Hippler's motion and barred Wakefield's testimony, observing that she would not contradict Charlton's testimony that sexual assault victims do not always immediately report being raped.  In the court's view, the fact that some reports of rape are false was a matter within the common knowledge of lay jurors and therefore Wakefield's testimony would not assist the jury.  Then the court questioned the relevance of state expert Charlton's testimony, stating:

> [K.N.'s] explanation for her delay is I was threatened with a gun. Would the jury think being threatened with a gun is a reasonable reason to delay? I would think so, without having [an] expert witness tell them that, so you really didn't need an expert in the first place. But I didn't realize that was going to be the reason given by the victim ... I don't know a lot of these things until I first hear them [during trial]. And had I known that I wouldn't have found the state's testimony of any real relevance in this case.

Trial Tr., dkt. 29, exh. 3, at 29-30.

The jury found Hipler guilty and the court sentenced him to 20 years on the sexual assault charge, bifurcated into 10 years' confinement followed by 10 years' extended supervision. The court imposed a concurrent six-year sentence on the false imprisonment charge, with three years of initial confinement followed by three years of extended supervision.

**II. Post-conviction Proceedings**

After trial Hipler retained a new lawyer, Steven Meshbesher. Meshbesher filed a postconviction motion in the trial court under Wis. Stat. § 974.02.[1] Seizing on the trial court's remarks during the hearing on Wakefield's testimony, Meshbesher argued that the court had erred in admitting Charlton's testimony. In the alternative, he argued, the trial court had erred in failing to give a curative instruction or allowing rebuttal testimony from the defense expert after it found that Charlton's testimony was not relevant. He also argued that the trial court had erred in allowing the introduction of K.N.'s testimony that she saw cocaine in Hipler's bedroom and that Nelson had been ineffective for failing to request a curative instruction after the trial court questioned retrospectively the relevance of Charlton's testimony. The trial court denied Meshbesher's motion and Hipler filed a direct appeal, raising these same claims as well as a claim that the trial court had erred in allowing lay testimony of a prosecution witness despite the state's failure to provide timely notice, and a claim that the court had abused its discretion when imposing Hipler's sentence.

In an unpublished opinion issued October 26, 2006, the Wisconsin Court of Appeals rejected Hipler's claims and affirmed his conviction. Op. on Direct Appeal, dkt. 13, exh. B. The court found that notwithstanding the trial court's later statement that Charlton's testimony was largely irrelevant, the court had properly exercised its discretion when it admitted Charlton's testimony under the circumstances that existed at that juncture in the trial. *Id.* at ¶25. The court also rejected Hipler's demand for a new trial on the ground that the trial court's

---

[1]For an overview of Wisconsin's procedures for review of criminal convictions, see *Page v. Frank*, 343 F.3d 901, 905-07 (7th Cir. 2003).

subsequently determined that Charlton's testimony had been irrelevant.  The court of appeals noted that Hipler had not explained how Charlton's testimony had prejudiced him.  In the court's view, the jury would have given little weight to Charlton's general testimony in light of K.N.'s specific testimony that she did not report the assault immediately to law enforcement because of the gun threat.  *Id*. at ¶26.

The court rejected Hipler's argument that he should have been allowed to introduce the testimony of his expert to counter the state's expert, explaining that:

> The trial court excluded Wakefield's testimony because her testimony was not relevant, was cumulative, and not inconsistent with Charlton's testimony.  The court also concluded that Wakefield's proffered testimony would be unhelpful to the jury on the topic of false reporting by rape victims; the court viewed this topic as being in the jury's province and rejected the notion that this was a proper topic for expert testimony.  Hipler has not persuaded us that the trial court erroneously exercised its discretion in excluding Wakefield's testimony.

*Id*. at ¶27 (footnote omitted).

The court upheld the trial court's admission of K.N.'s testimony that she had seen cocaine in Hipler's bedroom, finding that it had been properly admitted under Wis. Stat. § 904.04(2) to prove motive, intent and context for Hipler's actions the rest of the evening and that Hipler had failed to develop any argument that the evidence was unduly prejudicial.  *Id*. at ¶¶15-16.  With respect to Hipler's argument that the court should have provided a limiting instruction to the jury regarding the proper use of the evidence, the court found the issue waived because trial counsel had never requested a limiting instruction.  *Id*. at ¶17.

Hipler petitioned for review by the Wisconsin Supreme Court, which declined to hear his case.

After his conviction was final, Hipler hired a new lawyer, T. Christopher Kelly, who filed a post-conviction motion under Wis. Stat. § 974.06, arguing that his previous attorneys had been ineffective. Hipler contended that his trial attorney, Nelson, had been ineffective for failing to include a constitutional argument in his objection to the trial court's order excluding Wakefield's testimony, and for failing to seek a limiting instruction for the evidence that Hipler had been dealing cocaine at the time of the alleged sexual assault. Because relief under § 974.06 is not available for issues not raised on direct appeal unless the defendant had a "sufficient reason" for the omission, *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W. 2d 157 (1994), Hipler argued that the reason he had failed to raise these arguments sooner was because Meshbesher had provided ineffective assistance during the § 974.02 proceeding. The circuit court denied Hipler's motion without an evidentiary hearing, the court of appeals affirmed, and the Wisconsin Supreme Court denied Hipler's request for discretionary review. Thus, the last state court to rule on the merits of Hipler's claims was the Wisconsin Court of Appeals. I discuss that court's rulings in more detail below.

**OPINION**

### I. Can this court even consider Hipler's claim of ineffective assistance of post-conviction counsel?

I directed the parties to address the question whether Hipler's claims of ineffective assistance of counsel during post-conviction proceedings are even cognizable in a federal habeas corpus action. This direction was prompted by the decision in *Huusko v. Jenkins*, 556 F.3d 633 (7th Cir. 2009), in which the court questioned whether such claims are barred by 28 U.S.C. § 2254(I), which provides that "[t]he ineffectiveness or incompetence of counsel during Federal

or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." The court questioned whether Wisconsin's procedure in § 974.02 should be deemed "collateral," noting that in federal court and most state courts, a hearing to inquire into the effectiveness of trial counsel was normally a collateral proceeding. *Id*. at 635-36. The court noted that if Wisconsin's § 974.02 proceeding was deemed non-collateral and therefore outside the scope of § 2254(I), then "Wisconsin's prisoners will enjoy a right to effective assistance of counsel in pursuing ineffective-assistance contentions, even though prisoners in Indiana, Illinois, and most other states do not enjoy such a right." *Id*. at 636. Having posed the question, the court decided not to answer it, noting that the state had waived it and petitioner's claim failed on the merits. *Id*. at 635.

In the instant case, the state affirmatively asserts that § 974.02 proceedings are not collateral. This assertion is not necessarily dispositive, *see Huusko*, 556 F.3d at 536, but as in *Huusko*, "it is best to wait for an adversarial presentation, in a case where the answer matters, before addressing whether § 2254(I) applies." *Id.* This is not that case. Therefore, I will assume without deciding that Hipler's claim is not barred by § 2254(I).

### II. Merits

#### A. Legal Standards

The Sixth Amendment, made applicable to the states by way of the Due Process Clause of the Fourteenth Amendment, *see Gideon v. Wainwright*, 372 U.S. 335 (1963), entitles a criminal defendant to the effective assistance of counsel not only at trial, but during his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387 (1985). The appropriate standard for evaluating a claim

of ineffective assistance of appellate counsel is the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating claims of ineffective trial counsel.  *See Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001).[2]  In order to prevail on a Sixth Amendment ineffectiveness claim, a petitioner must satisfy both prongs of a two-pronged test.  He must first show that his lawyer's performance "fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  Second, the petitioner must show that any ineffectiveness prejudiced him, rendering the proceeding fundamentally unfair and the result unreliable.  *Strickland*, 466 U.S. at 687, 691-92.

As in the trial context, an appellate lawyer's choices are presumed to be reasonable.  *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001).  A defendant rebuts this presumption only if he shows that counsel abandoned "significant and obvious" issues that were "clearly stronger" than those presented.  *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996); *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).  The performance inquiry overlaps the prejudice inquiry, which requires the defendant to show that the omitted issue may have resulted in a reversal of the conviction or an order for a new trial.  *Mason*, 97 F.3d at 893.

Pursuant to the AEDPA, a federal court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §

---

[2] Hipler does not challenge Meshbesher's performance in the court of appeals but only in the § 974.02 proceeding in the trial court, which is how and where claims of ineffective assistance of trial counsel must be made in Wisconsin.  *State v. Machner*, 92 Wis. 2d 797, 285 N.W. 2d 905 (Ct. App. 1979). Even though Meshbesher was in front of the trial court, given t he nature of the proceedings, I will review Meshbesher's performance using the appellate attorney version of the *Strickland* test.

2254(d); *Williams v. Taylor*, 529 U.S. 362, 376 (2000). Thus, a petitioner alleging ineffective assistance of counsel must do more than show that he would have satisfied *Strickland*'s test if his claim was being analyzed in the first instance; he must show that the state courts applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); 28 U.S.C. § 2254(d)(2). Showing that a state court unreasonably applied *Strickland* is extraordinarily difficult because *Strickland* itself is a deferential test that presumes the reasonableness of counsel's decisions. This means that only a clear error in applying *Strickland*'s standard will support a writ of habeas corpus. *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997); *see also Knowles v. Mirzayance*, ___ U.S. ___, 129 S.Ct. 1411, 1420 (2009)("the question is not whether a federal court believes that the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable–a substantially higher threshold").

### B.  Trial counsel's failure to object to exclusion of Wakefield's testimony on constitutional grounds

As an initial matter, I note that this court probably could deny the petition simply on the ground that Hipler failed to meet his burden under the AEDPA: apart from a boilerplate paragraph setting out the standard of review, Hipler fails in his brief to identify the controlling Supreme Court cases or show why the state appellate court applied those cases in an unreasonable manner. Instead, Hipler proceeds as if his case is on direct review. It is well-settled that a court will not develop a party's arguments for him. Hipler asserts that "his entire argument is intended to show . . . that the rationale of the State court decision is therefore an unreasonable application of those standards, in that it ignores the facts and law, and simply

doesn't make rational sense," Reply Br., dkt 30, at 2-3. But this is not a substitute for the sort of tailored arguments, supported by relevant legal authority, that a petitioner must make in order to meet his burden under § 2254(d). *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.")

In any case, the Wisconsin Court of Appeals did not unreasonably apply clearly established federal law when it denied Hipler's claims of ineffective assistance of post-conviction counsel. Addressing Hipler's claims that Meshbesher had provided ineffective assistance during the § 974.02 proceeding, the Wisconsin Court of Appeals recognized that *Strickland*'s two-part test established the controlling standard, Op. on Appeal, dkt. 13, exh. G, at ¶10, then determined that Hipler had not met this standard. With respect to the claim that Meshbesher should have raised a claim of ineffectiveness based upon trial counsel's failure to object to the exclusion of Wakefield's testimony on constitutional grounds, the court wrote:

> Although a defendant has a constitutional right to present a defense, there is no constitutional right to present irrelevant evidence. *State v. Walker*, 154 Wis.2d 158, 192, 453 N.W. 2d 127 (1990). We agree with the circuit court that testimony that some claims of sexual assault are false would "state the obvious" and dress up the inference that Kelly might have lied as having "more weight simply because [Wakefield] is a supposed expert." Wakefield's testimony would not have been relevant. Hipler's postconviction counsel cannot have performed deficiently for failing to argue his trial counsel erred by not objecting to the exclusion of evidence he had no right to present. *State v. Toliver*, 187 Wis. 2d 346, 360, 523 N.W.2d 113 (Ct. App. 1994) (counsel is not ineffective for failing to make meritless arguments).
>
> Further, Hipler's postconviction counsel did address the relevance of both Wakefield's and Charlton's testimony. Rather than arguing Hipler had a right to counter Charlton's testimony by eliciting testimony from Wakefield–as Hipler does now–his

> postconviction counsel challenged the court's failure to instruct the jury to disregard Charlton's testimony. This was a reasonable strategy in light of the trial court's discussion of Charlton's testimony.
>
> *Id*. at ¶¶11-12.

This conclusion is not an unreasonable application of *Strickland*. Under the Sixth and Fourteenth Amendments, a defendant has a constitutional right to present witnesses and his version of the facts in his own defense, *e.g. Holmes v. South Carolina*, 547U.S. 319, 324 (2006), but this does not mean he has a right to present irrelevant evidence. *Morgan v. Krenke*, 232 F.3d 562, 569 (7th Cir. 2000). *See also Crane v. Kentucky*, 476 U.S. 683, 689-690 (1986) (trial judge has "wide latitude" to apply state's evidentiary rules before running afoul of Constitution). Both Nelson *and* Meshberger argued that Wakefield's testimony should have been admitted, but they could not convince either the trial court or the court of appeals that her testimony was relevant.[3] Hipler argues that by failing to raise the constitutional objection, Nelson cost him a more favorable *de novo* standard of review, but this argument is unpersuasive. As the court of appeals' decision on Hipler's § 974.06 motion makes clear, the claim would have failed even under *de novo* review.

Further, although Meshberger did not raise the evidentiary claim under the rubric of ineffective assistance of trial counsel or the right to present a defense, he specifically argued that it was unfair for the trial court to have allowed the state to present Charlton's testimony without allowing Hipler to present Wakefield's testimony. The court of appeals was unpersuaded.

---

[3] Contrary to the court of appeals' finding, Meshbesher *did* argue on appeal that Hipler had a right to counter Charlton's testimony by eliciting testimony from Wakefield. Opin. on Direct Appeal, dkt. 13, exh. B, at ¶27 ("We also reject Hipler's argument that he should have been allowed to introduce the testimony of Wakefield to counter Charlton's testimony"). Obviously, this factual error by the court does not entitle Hipler to habeas relief under § 2254(d)(1) because it cut in Hipler's favor.

Again, I fail to see how labeling the argument "constitutional" instead of "unfair" or "prejudicial" could have made any difference in the outcome. Hipler's defense was that K.N. was lying. To that end, the court allowed Hipler to cross-examine the victim and the state's other witnesses, to offer his own version of what happened, and to present corroborating defense witnesses. It was not unconstitutional/prejudicial/unfair for the trial court to rule that Hipler could not present an expert to state the obvious: some reports of sexual assault are false. Even if this point wasn't sufficiently obvious on its own, Charlton conceded on cross-examination that not all rape allegations are true. Finally, apart from challenging Charlton's expertise, Wakefield had nothing to say that would have countered Charlton's testimony that it is not uncommon for sexual assault victims to delay reporting the crime and to experience shock or other emotions after the assault.

In short, Hipler's right to present a defense is not the actual claim before this court, but if it were, it would not succeed. *Cf. Malinowski v. Smith*, 509 F.3d 328, 338 (7th Cir. 2007)(order prohibiting child sexual assault victim's counselor from providing his opinion of victim's credibility did not violate Supreme Court precedent regarding right to present a defense; among other things, defendant "directly challenged [the victim's] credibility through cross-examination and by presenting testimony from a family friend that [the victim] was 'an untruthful person.'"). Perforce, Hipler cannot show that the state court of appeals unreasonably rejected his challenges to the effectiveness of his trial and post-conviction lawyers for failing to raise the claim.

### C. Counsel's failure to argue that trial counsel was ineffective for failing to seek a limiting instruction on the cocaine evidence

The state appellate court determined that Hipler had failed to allege facts sufficient to show that Nelson had been deficient for not requesting a limiting instruction on the cocaine evidence, or that Meshbesher had been deficient for not raising the claim during the post-conviction proceedings. The court rejected Hipler's suggestion that the failure to request an instruction was *ipso facto* deficient, explaining:

> Failure to request a limiting instruction does not itself constitute ineffective assistance. "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the judge, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Wis. Stat. § 901.06 (2005-06). Implicit in the notion that an instruction shall be given when requested is the recognition that an attorney is not obligated to seek a limiting instruction whenever evidence is admitted for one purpose, but not another.
>
> Simply stating that his trial counsel failed to request a limiting instruction does not state sufficient material facts that, if true, would entitle Hipler to relief. More is required. To succeed, Hipler must state why, under the facts of this case, it was deficient for his trial counsel to not request a limiting instruction, and why, within the context of the issues his postconviction counsel did raise on appeal, his postconviction counsel denied him effective assistance of counsel. He does neither. Rather, he explains neither why this amounts to ineffective assistance of trial counsel nor how this implicates the counsel his postconviction attorney provided him. It was therefore within the circuit court's discretion to deny his motion for postconviction relief without an evidentiary hearing.

Op. on Appeal from Denial of § 974.06 Motion, dkt. 13, exh. G, at ¶¶14-15.

As with his previous claim, Hipler does not attack the state court's reasoning or attempt to meet his burden under § 2254(d). Instead, he argues as if presenting a direct appeal, asserting

that "[g]iven the very damaging nature of the cocaine evidence, Nelson's failure to request such a readily available and automatically given instruction is inexplicable." Br. in Supp., dkt. 22, at 17. At the least, argues Hipler, this court should hold an evidentiary hearing to discover Meshberger's, and if necessary Nelson's, reasons for not raising the issue.

Hipler's arguments are unpersuasive. First, he has not attempted to show that he meets the stringent criteria for an evidentiary hearing in federal court, as discussed in *Schriro v. Landrigan*, 550 U.S. 465 (2007), and *Williams v. Taylor*, 529 U.S. 420 (2000). *See also* 28 U.S.C. § 2254(e)(2). Second, simply describing the cocaine evidence as "very damaging" falls far short establishing that the issue was "clearly stronger" than the others that Meshberger raised on direct appeal, or that raising the issue likely would have led to a reversal of the conviction.

First, given the reason why the cocaine evidence was admissible at this sexual assault trial, it was extraordinarily unlikely that the court's failure to limit the jury's consideration of this evidence had any influence whatsoever on the jury's verdict. The jury would have heard the cocaine evidence no matter what. Any limiting instruction from the court would have tethered the cocaine evidence to Hipler's extended restraint of K.N. Hearing the presiding judge announce this connection was as likely as not to intensify the corroborative effect of the cocaine evidence, thereby increasing the evidence's allowable prejudicial effect.[4] The purposes for which the court admitted the cocaine evidence went to the heart of K.N.'s sexual assault allegations. On these facts, it's hard to imagine that the jury would have been more inflamed by the

---

[4] After all, "relevant evidence is inherently prejudicial." *United States v. Lloyd*, 71 F.3d 1256,1265 (7th Cir. 1995). Relevant evidence cannot be excluded just because it's detrimental to one party's case; if it weren't prejudicial, it wouldn't be relevant in the first place. Rather, the salient inquiry is whether any *unfair* prejudice from the evidence *substantially* outweighed its probative value. *Id.; See also United States v. Perkins*, 548 F.3d 510, 515 (7th Cir. 2008).

simple fact that Hipler sold cocaine than by the fact that Hipler falsely imprisoned and sexually assaulted at gunpoint a woman who accidently stumbled across his drug sales.

Further, this evidence of the cocaine possession came in through K.N., whose credibility was the focus of the entire trial. Once the jury determined that K.N. was telling the truth, it would have found Hipler guilty of sexual assault and false imprisonment regardless if it thought he was a bad person because he possessed cocaine. In short, Hipler cannot show that he was unfairly prejudiced by the court's failure to provide a limiting instruction; in fact, in this peculiar situation, one could rationally argue that it was a tactically more sound decision not to have the court instruct the jury on the connection between the cocaine evidence and the sexual assault evidence. Perforce, neither trial counsel nor appellate counsel could have been ineffective for having failed to pursue this point. The Wisconsin Court of Appeals' adjudication of this claim was not contrary to nor an unreasonable application of clearly established federal law.

## CONCLUSION

The record does not support Hipler's contention that the Wisconsin courts unreasonably applied clearly established federal law or unreasonably decided the facts in rejecting his claims. Accordingly, his petition for a writ of habeas corpus must be denied.

## CERTIFICATE OF APPEALABILITY

The last question is whether to grant a certificate of appealability to Hipler. Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to Hipler. To obtain a certificate of appealability, the

applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

The rule allows a court to ask the parties to submit arguments on whether a certificate should issue, but that's unnecessary in this case because the question is not close. Hipler's trial lawyer waged a vigorous defense that included a thorough examination of the victim and the state's expert witness, and presented a number of defense witnesses who corroborated Hipler's version of events. Post-conviction/appellate counsel argued and lost essentially the same claim that Hipler seeks to raise here, when the court of appeals upheld the trial court's finding that Wakefield's testimony was irrelevant. As the state court of appeals made clear, a constitutional objection would have failed. A reasonable juror could not debate the conclusion that Hipler cannot show denial of his right to the effective assistance of counsel during the Wis. Stat. § 974.02 proceeding.

**ORDER**

IT IS ORDERED that Joseph Hipler's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

Entered this 23rd day of April, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge